# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MICHAEL DANIELS,

                     Petitioner,

v.

UNITED STATES OF AMERICA,

                     Respondent.

Case No. 15-CV-1440-JPS
Criminal Case No. 90-CR-42-JPS

**ORDER**

       On November 30, 2015, Petitioner Michael Daniels ("Daniels") filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Docket #1). On March 19, 2016, with the aid of counsel and the Court's leave, Daniels filed an amended motion. (Docket #9). After the parties briefed the motion, the Court determined that it should be stayed pending resolution of several relevant appeals before the Seventh Circuit relating to the effect of *Johnson v. United States*, 135 S. Ct. 2551 (2015), on the petition. (Docket #13). Also at that time, another pertinent case, *Beckles v. United States*, No. 15-8544, was pending in the Supreme Court.

       *Beckles* was decided on March 6, 2017. *Beckles v. United States*, 137 S. Ct. 886 (2017). After that decision was issued, the parties sought to lift the stay in this case and brief how the disposition in *Beckles* affects Daniels' pending motion. *See* (Docket #16). That briefing completed, the Court now turns to considering the merits of Daniels' motion. For the reasons stated below, the Court finds that *Beckles* precludes his claim and, as a result, his motion must be denied.

1.  **BACKGROUND**

In the underlying criminal case, Daniels was convicted of one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; three counts of using a communication facility to facilitate the distribution of cocaine, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2; and one count of using firearms in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). He was sentenced as a career offender under the U.S. Sentencing Guidelines. The Court imposed concurrent sentences totaling 420 months on the narcotics offenses and a consecutive sentence of sixty months on the firearms offense, for a total of 480 months of incarceration.

After a partially successful previous motion under Section 2255, the Court resentenced Daniels on November 25, 1997, again as a career offender under the Guidelines. This time, the Court imposed the same 420 months on the drug convictions but, in light of the result of the habeas motion, it did not impose a consecutive sentence for the firearm conviction. Daniels unsuccessfully appealed this resentencing and thereafter filed a number of post-conviction motions, some of which the Court characterized as Section 2255 motions. *See* (Case No. 90-CR-42-JPS, Docket #568). Eventually, he sought leave from the Court of Appeals to file the instant motion, which was granted. *See* 28 U.S.C. § 2244(b)(3); (Case No. 90-CR-42-JPS, Docket #571).

The Guidelines provide that those who qualify as "career offenders" must be given certain offense level and criminal history category increases. U.S.S.G. § 4B1.1(b). A defendant is a career offender if (1) he was at least eighteen years old at the time he committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is

either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. *Id.* § 4B1.1(a). At the time Daniels was sentenced, the term "crime of violence" as used in the Guidelines was defined as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." *Id.* § 4B1.2(a) (emphasis added). The italicized portion of this definition is known as the "residual" clause.[1]

One of Daniels' predicate offenses for purposes of the career-offender Guideline was a narcotics offense. (Docket #12 at 4). The parties agree that because it was not a drug trafficking offense, it should not have qualified as a predicate. *Id.* However, that issue is not presently before the Court because it should have been included in Daniels' prior collateral attacks and was not. *See* (Case No. 90-CR-42-JPS, Docket #571 at 2). Daniels therefore presses his claim only as to his other predicate offense,

---

[1]Pursuant to Amendment 798 to the Guidelines, effective August 1, 2016, the Sentencing Commission deleted the residual clause contained in U.S.S.G. § 4B1.2(a)'s definition of a "crime of violence" and replaced it with language that simply enumerates specific offenses that can be considered crimes of violence. Amendment 798 was not made retroactive, *see* U.S.S.G. § 1B1.10(d) (listing amendments to be applied retroactively pursuant to 18 U.S.C. § 3582(c)(2)), and it is therefore not applicable to Daniels, U.S.S.G. § 1B1.11 ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."); *Belton v. United States*, 71 F. App'x 582, 583 (7th Cir. 2003) (noting that Section 1B1.10 of the Guidelines defines which amendments may be applied retroactively).

which involved sexual misconduct against a minor. (Docket #12 at 4). That crime qualified as a career-offender predicate only under the residual clause.

At the time of Daniels' sentencing and resentencing, adherence to the Guidelines was mandatory. The Supreme Court in *United States v. Booker*, 543 U.S. 220, 233 (2005), found that this practice was unconstitutional. Since *Booker*, the Guidelines are the starting point in fashioning sentences but can be departed from under appropriate circumstances. *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013).

In 2015, the Supreme Court invalidated the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *Johnson*, 135 S. Ct. at 2560. The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B) (emphasis added). Notably, the emphasized portion of this definition is identical to the analogous clause in the career-offender Guideline, U.S.S.G. § 4B1.2(a)(2), and it is also referred to as the "residual" clause. The *Johnson* Court found that the ACCA's residual clause is unconstitutionally vague, in violation of the Due Process Clause of the Fifth Amendment. *Johnson*, 135 S. Ct. at 2560.

In 2015, Daniels filed the instant motion. According to him, because *Johnson* found that the ACCA's residual clause is unconstitutionally vague, the same result should obtain for the identically worded residual clause in the Guidelines. *See United States v. Edwards*, 836 F.3d 831, 835 n.2

(7th Cir. 2016) (observing that cases analyzing "violent felony" under the ACCA and "crime of violence" under the Guidelines are interchangeable). After Daniels' motion was fully briefed, the Court stayed the case pending resolution of several pertinent appeals, as noted above. Most salient here is the decision in *Beckles*, which held that the residual clause of the career-offender Guideline, unlike the ACCA, is not susceptible to vagueness challenges. *Beckles*, 137 S. Ct. at 897.

Key to the Court's analysis was the fact that the ACCA represented a legislative pronouncement fixing the permissible range of sentences for qualifying conduct. *Id.* at 892. By contrast, the post-*Booker*, advisory Guidelines "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Id.* Because judicial discretion is part and parcel of the Guidelines, the constitutional concerns that animated *Johnson*—providing notice to defendants of what conduct will subject them to enhanced penalties under the ACCA and preventing arbitrary application of the ACCA's standards—are not implicated by the Guidelines. *Id.*

In her concurrence, Justice Sotomayor contended that the Guidelines should be open to vagueness challenges because of their centrality in the sentencing process. *Id.* at 900 (Sotomayor, J., concurring in the judgment). More important to this case, however, is her suggestion that "[t]he Court's adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced to terms of imprisonment before our decision in [*Booker*]—that is, during the period in which the Guidelines did 'fix the permissible range of sentences'—may mount vagueness attacks on their sentences." *Id.* at 903 n.4 (internal citations omitted). Justice Sotomayor

expressed no firm view on the merit of any such challenge. *Id.* ("That question is not presented by this case and I, like the majority, take no position on its appropriate resolution.").

## 2. DISCUSSION

It is in that very analytical gap the Court now finds itself. Daniels argues that the mandatory Guidelines under which he was sentenced are invalid, based on the mandatory-advisory contrast set up in *Beckles* and reasoning he borrows from the now-abrogated *United States v. Hurlburt*, 835 F.3d 715, 719–25 (7th Cir. 2016) (en banc), in which the Seventh Circuit held that the advisory Guidelines were void for vagueness. (Docket #19 at 3). In Daniels' view, the mandatory Guidelines "'were the practical equivalent of a statute,'" and therefore can be subject to vagueness challenges. *Id.* at 7 (quoting *Hawkins v. United States*, 706 F.3d 820, 822 (7th Cir. 2003)). Indeed, the government argued in *Beckles* itself that the mandatory Guidelines were problematic because they too strongly cabined the sentencing court's discretion. *Id.*; *but see Krieger v. United States*, 842 F.3d 490, 499 (7th Cir. 2016) (a court is not bound to accept a government concession on a point of law).

In a recent case raising precisely the same claim, the government argued that since *Beckles* did not decide whether the mandatory Guidelines are open to vagueness challenges, the Court must look to pre-existing authority from the Seventh Circuit—specifically, *United States v. Tichenor*, 683 F.3d 358 (7th Cir. 2012), and *United States v. Brierton*, 165 F.3d 1133 (7th Cir. 1999), which held that neither the advisory nor the mandatory Guidelines were subject to vagueness challenges. *See Cross v. United States*, Case No. 15–CV–1338–JPS, 2017 WL 2345592, at *3 (E.D. Wis.

May 30, 2017).[1] As explained in *Cross*, the government's view is that the same reasons for upholding advisory Guidelines against vagueness challenges apply equally to a mandatory Guideline. In particular, both types of Guidelines permit judicial discretion to depart in appropriate circumstances, even if departure under the mandatory Guidelines was more circumscribed. *See* (Docket #21 at 2).

Both parties' positions on *Beckles* have some appeal. *Cross*, 2017 WL 2345592, at *3. As in *Cross*, here the Court must leave to the Court of Appeals the task of harmonizing the morass of relevant precedent. On the present record and the state of the law, the Court finds that *Hurlburt* has been abrogated on the very issues upon which it abrogated *Tichenor* and *Brierton*. As a result, those prior cases have been revived, and they require dismissal of Daniels' claim.[2]

For the benefit of the parties and the completeness of the record, the Court will repeat here much of its discussion of these cases in *Cross*. First, in *Brierton*, the Court of Appeals rejected a due-process vagueness

---

[1] The government's presentation on this point in this case is less well-developed than in *Cross*. Nevertheless, because Daniels addressed the interaction of *Brierton*, *Tichenor*, and *Hurlburt* in his post-*Beckles* briefing, the Court is on solid ground in relying on the conclusions drawn in *Cross* to dispose of the materially identical claim Daniels raises here.

[2] As an aside, the Court notes that the government at various points suggests that Daniels' motion should be denied because his sentence would fall within the applicable Guidelines range even if his career-offender enhancement was removed. *See* (Docket #18 at 8–9). The government ignores *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016), which held that "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." Nevertheless, the Court need not decide whether Daniels benefits from this rule, since his motion falters on other grounds, as explained below.

challenge to the mandatory Guidelines. *Brierton*, 165 F.3d at 1138–39. The court concluded that the Guidelines are not created to give notice of proscribed conduct to citizens at large but are instead "'directives to judges for their guidance in sentencing convicted criminals.'" *Id.* (quoting *United States v. Wivell*, 893 F.2d 156, 160 (8th Cir. 1990)). Because they constrain only the discretion of the sentencing judge, the court found, "the Guidelines are not susceptible to attack under the vagueness doctrine." *Id.*; *accord United States v. Idowu*, 520 F.3d 790, 795–96 (7th Cir. 2009).

Next, in *Tichenor*, the Seventh Circuit extended *Brierton* to preclude a vagueness attack on the post-*Booker*, advisory Guidelines. *Tichenor*, 683 F.3d at 364. Notably, the court in *Tichenor* was unpersuaded by the defendant's attempt to analogize the Guidelines to statutes, holding that although the Guidelines influence the sentencing court, "[t]he sentencing judge's authority to exercise discretion distinguishes the Guidelines from criminal statutes in a significant and undeniable manner." *Id.* at 365. Moreover, the Court of Appeals, reviewing in *Tichenor* the career-offender Guideline, found that "*Brierton* and *Idowu* did not rest on the specific provisions at issue," so the fact that they assessed other Guidelines provisions was of no moment. *Id.* at 366. The Seventh Circuit found nothing in the career offender Guideline that was "'more problematic' than the guidelines challenged in our prior cases." *Id.*

Finally, there is *Hurlburt*, in which the Seventh Circuit overruled *Tichenor*. *Hurlburt*, 835 F.3d at 725. The court noted that *Tichenor* rested on two interrelated premises, both of which had been undermined by intervening Supreme Court decisions. *Id.* at 722. First, *Johnson* eviscerated *Tichenor*'s premise that the vagueness doctrine cannot apply to the Guidelines because they only provide directives to judges in sentencing

rather than defining illegal conduct. *Id.* Second, in *Peugh*, 133 S. Ct. at 2077–78, the Court held that the advisory Guidelines are subject to the limitations imposed by the Constitution's Ex Post Facto Clause. Thus, in *Peugh*, the district court remained obliged to apply the Guidelines in effect when the defendant committed his crime, not the harsher Guidelines in effect when he was sentenced. *Id.* In *Hurlburt*, the Seventh Circuit found that *Peugh* undermined *Tichenor*'s conclusion that the vagueness doctrine does not affect the Guidelines because they are merely advisory. *Hurlburt*, 835 F.3d at 724.

The suggestion that *Hurlburt*'s overruling of *Tichenor* survived *Beckles* certainly has some persuasive force. As to *Tichenor*'s first premise, *Beckles* appears to have affirmed the view expressed in *Johnson* that both laws that define criminal offenses and those that fix permissible sentences can be void for vagueness. *Beckles*, 137 S. Ct. at 892. Assuming this is true, *Beckles* affirms the Seventh Circuit's view in *Hurlburt* on this point.

*Tichenor*'s second premise—that the Guidelines are not statute-like enough to be attacked as vague—is likewise debatable. *Booker* had harsh words for the mandatory Guidelines, saying that "we have consistently held that the Guidelines have the force and effect of laws." *Booker*, 543 U.S. at 234. The Court explained that

> [a]t first glance, one might believe that the ability of a district judge to depart from the Guidelines means that she is bound only by the statutory maximum. Were this the case, there would be no *Apprendi* problem. Importantly, however, departures are not available in every case, and in fact are unavailable in most. In most cases, as a matter of law, the Commission will have adequately taken all relevant factors into account, and no departure will be legally permissible. In those instances, the judge is bound to impose a sentence within the Guidelines range.

*Id.* This concern was echoed in *Peugh*, where the majority opined that even post-*Booker*, the Guidelines anchor the federal sentencing scheme and "remain a meaningful benchmark through the process of appellate review." *Peugh*, 133 S. Ct. at 2083. Indeed, even the advisory Guidelines require a justification for the sentencing court's departure therefrom. *Id.*; *see also Hawkins*, 706 F.3d at 822 (departures from mandatory Guidelines "were permitted on specified grounds, but in that respect the guidelines were no different from statutes, which often specify exceptions").

But *Beckles* seemed to walk back this view, returning to the fundamental notion expressed in *Brierton* and *Tichenor* that merely cabining a sentencing judge's discretion does not give rise to vagueness concerns. The Court relied heavily on the idea that the advisory Guidelines "merely guide the district court's discretion," and a "system of guided discretion" is not amenable to a vagueness challenge. *Beckles*, 137 S. Ct. at 894. Further, the Court distinguished *Peugh*, stating that while the unique features of the Guidelines rendered them immune from vagueness scrutiny, cases like *Peugh* provide that other constitutional challenges are permissible because those inquiries are "'analytically distinct.'" *Id.* at 895 (quoting *Peugh*, 133 S. Ct. at 2088). Thus, this premise of *Tichenor* and *Brierton* appears to have survived—and even been reinforced by—*Beckles*.

Against this backdrop, the Court is obliged to conclude that it is bound not by *Hurlburt* but by the intervening authority of *Beckles*. If the Seventh Circuit can better thread the needle through the analytical minefield left in the wake of these cases, it is certainly welcome to do so. This Court cannot undertake that task, since it is first and foremost bound to follow the law given to it by higher courts. Because the Court cannot

conclude with certainty that *Hurlburt*'s abrogation of *Tichenor* has continuing force after *Beckles*, the Court is constrained to follow *Beckles*, *Tichenor*, and *Brierton*, which point ineluctably to the conclusion that even mandatory Guidelines are not amenable to vagueness challenge. *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987) (in order to depart from appellate precedent, the district court must be "powerfully convinced" that the higher court would overrule its previous decision "at the first available opportunity"); *Olson v. Paine, Weber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986) (lower courts shall not go against binding precedent unless a subsequent decision makes it "almost certain" that the higher court would reverse its previous position "if given a chance to do so"); *see also Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.").[3]

---

[3]The Court notes that several district courts around the country have already issued decisions on this issue, though none within this Circuit. For instance, in *United States v. Tunstall*, Case No. 3:00-cr-050, 2017 WL 1881458, at *6 (S.D. Ohio May 9, 2017), the district court found that the mandatory Guidelines are sufficiently statute-like to implicate the due-process vagueness concerns not applicable to the advisory Guidelines. By contrast, in *Cottman v. United States*, Case No. 8:16–cv–1575–T–24TBM, 2017 WL 1683661, at *2 (M.D. Fla. May 3, 2017), the court found that, much like this case, existing Eleventh Circuit precedent dictated that the mandatory and advisory Guidelines are equally insulated from vagueness attacks. *See also In re Griffin*, 823 F.3d 1350, 1354 (11th Cir. 2016); *United States v. Matchett*, 802 F.3d 1185, 1193–96 (11th Cir. 2015).

3.  **CONCLUSION**

The Court is bound to follow controlling Supreme Court and Seventh Circuit precedent in this case, and that authority dictates that vagueness challenges may not be raised against the pre-*Booker*, mandatory Guidelines.[4] However, because this question is close enough to be the subject of vigorous debate, the Court will grant Daniels a certificate of appealability in this case. *See* Rule 11(a) of the Rules Governing Section 2255 Cases; *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (to obtain a certificate of appealability, the movant must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition

---

[4]Because of the Court's view of *Beckles*, it need not reach the parties' dispute concerning whether *Johnson*'s holding regarding the ACCA can be retroactively applied to the Guidelines. The government says that the Court is without jurisdiction to consider the merits of Daniels' claim in the absence of a retroactivity finding. *See* (Docket #18 at 4–5). True enough, Section 2255(f) requires dismissal of claims in second or successive petitions based on rules not made retroactive by the Supreme Court. *See* 28 U.S.C. §§ 2255(f), 2244(b); *Ashley v. United States*, 266 F.3d 671, 674–75 (7th Cir. 2001). But, like cases dealing with the potential retroactivity of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), here the Court finds that it need not decide the retroactivity question since, even if the proposed rule is retroactive, it fails on its merits in light of *Beckles*, *see Brannigan v. United States*, 249 F.3d 584, 587 (7th Cir. 2001); *Hernandez v. United States*, 226 F.3d 839, 841 (7th Cir. 2000) (dismissing a Section 2255 motion without prejudice to await a favorable retroactivity ruling from the Supreme Court "is not required. . .if there are alternate grounds for resolving the claim once and for all at the time it is presented").

That said, the Court observes that several recent decisions from other district courts have concluded that extending *Johnson* to the mandatory Guidelines would constitute a new rule that must first be recognized in the Supreme Court. *See Mitchell v. United States*, Case No. 3:00-CR-00014, 2017 WL 2275092, at *5 (W.D. Va. May 24, 2017) (collecting cases); *see also Griffin*, 823 F.3d at 1355 (observing that *Johnson*'s holding with respect to the ACCA could not be automatically retroactively applied to cases involving Guidelines challenges). Because existing Seventh Circuit precedent provides a more direct path to the disposition of this case, the Court does not decide the retroactivity question here.

should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further").

Accordingly,

**IT IS ORDERED** that Petitioner's amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Docket #9) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **GRANTED**.

The Clerk of the Court is directed to enter judgment accordingly

Dated at Milwaukee, Wisconsin, this 16th day of June, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge